UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JULIUS M. BANNERMAN,

       Plaintiff,

v.                                 Case No. 2:05-cv-264
                                 HON. GORDON J. QUIST

BEATRICE HURSH,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Julius M. Bannerman, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Sergeant Beatrice Hursh, who was employed by the MDOC at LMF during the pertinent time period.

Plaintiff's complaint alleges that he received a misconduct ticket on August 5, 2005, and that his hearing on the ticket was scheduled for August 15, 2005.  Plaintiff claims that on August 15, 2005, Defendant approached his cell, but never made an attempt to speak, knock, or otherwise gain his attention in order to inform him of his hearing or give him the opportunity to attend the hearing.  Plaintiff contends that Defendant had a duty to come to his cell and wake him if necessary in order to inform him of his hearing and give him the opportunity to be present during the hearing.  Plaintiff claims that, as a result of Defendant's failure, he was deprived of the opportunity to attend his hearing.  Plaintiff further states that Defendant had a "custom and pattern" of denying black prisoners, like Plaintiff, the opportunity to appear at administrative hearings.  Plaintiff asserts that he is not contesting the major misconduct conviction, but is merely asserting

the denial of his right to "orally defend and the opportunity to appear."  Plaintiff lost 5 days of good time as a result of his misconduct conviction.

Plaintiff claims that Defendant's actions violated his rights under the Fourteenth Amendment to the United States Constitution.  Plaintiff is seeking compensatory and punitive damages, as well as equitable relief.

Presently before the Court is Defendant's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed a response and the matter is ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.  *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably

find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In Defendant's brief in support of the motion for summary judgment, she claims that on the morning of August 15, 2005, she asked Plaintiff if he wanted to attend his hearing, and Plaintiff declined. Defendant further states that she asks each prisoner whether they want to attend their hearings, regardless of the prisoner's race. In support of his response to the motion for summary judgment, Plaintiff offers his own affidavit, as well as affidavits of prisoners Opelton Kelly and Randolph Reed. In these affidavits, Plaintiff, Kelly and Reed attest that on August 15, 2005, while breakfast trays were being passed out by Resident Unit Officer B. Kennedy, Plaintiff asked if he was on the list for major misconduct court and indicated that he wished to attend. Kennedy stated that the list had not come in yet. Approximately one hour later, Plaintiff told Corrections Officer Tweedale that he wished to attend court and Tweedale responded that Defendant Hursh would be making rounds for court. Before the first "out of cell" period ended, Defendant Hursh walked down the unit, never pausing or asking Plaintiff if he wished to attend his hearing. Shortly thereafter, Plaintiff stopped Case Manager McBurney while he was making rounds and told him that it was the last day to be heard on his ticket, that he had told Kennedy, Tweedale and Myron, and that they did not know anything about the hearing. Plaintiff also stated that he wished to attend his hearing because he had a good chance of beating the ticket. McBurney responded that the Sergeant would come and ask him if he wished to attend court. Plaintiff told McBurney that Defendant Hursh had been by, but had not said anything to Plaintiff. McBurney then told Plaintiff to write a grievance. (*See* Exhibits #2, #3, and #4 to Plaintiff's brief in support of the response to the motion

for summary judgment.)  Therefore, in the opinion of the undersigned, there is a genuine issue of material fact regarding whether Defendant Hursh's conduct deprived Plaintiff of his right to attend his misconduct hearing.

Defendant Hursh contends that Plaintiff's claims are barred by the favorable termination doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) and *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).  The Supreme Court has held that a claim for declaratory relief and monetary damages that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned.  *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing).  The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).  As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005).  Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983.  *Id.*; *see also Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges), *cert. denied*, 122 S. Ct. 1795 (2002).  *See also Muhammad v. Close*, 540

- 4 -

U.S. 749 (2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated).

Plaintiff specifically declares that he is not challenging the duration of his sentence, but instead is challenging the denial of his right to be present during his hearing. His requests for relief do not include a request for an injunction granting him a reversal of his misconduct conviction. The undersigned notes that Plaintiff will not be entitled to damages caused by his continued incarceration, since such a claim necessarily implies the invalidity of the parole decision and is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]."), and *Edwards v. Balisok*, 520 U.S. 641, 648, 117 S. Ct. 1584, 1589 (1997) (where a prisoner's claim of unfair procedures in a hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983). Nevertheless, Plaintiff's due process and equal protection challenges under the Fourteenth Amendment are cognizable in a § 1983 action, because his challenges are to the denial of his right to be present during the hearing which may result in more favorable consideration, not to the actual decision to find Plaintiff guilty of the misconduct. *See Dotson v. Wilkinson*, 329 F.3d 463 (6th Cir. 2002) (en banc) (holding that challenge to parole eligibility as opposed to challenge to denial of parole is cognizable in § 1983 action); *Seagroves v. Tennessee Bd. of Probation & Parole*, No. 01-6274, 2002 WL 1379028 (6th Cir. 2002) (vacating district court's dismissal of action because prisoner challenging ex post facto parole procedures states cognizable claim under § 1983).

- 5 -

Defendant further claims that Plaintiff's due process claim should be dismissed because Plaintiff was provided with all the process due him because Michigan's hearing process provides for substantially more process than that required by the Due Process Clause. Defendant states that the MDOC requires advance written notice of the misconduct charge, a written statement by the factfinder as to the evidence relied on and reasons for the conclusion, an opportunity to present documentary evidence and to call witnesses - - when permitting an inmate to do so would not be unduly hazardous to institutional safety or correctional goals. Defendant also alleges that illiterate inmates are entitled to assistance, and that assistance must be available to any inmate to collect and present necessary evidence.

In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

In this case, Plaintiff claims that he was deprived of his ability to attend his own hearing. The undersigned notes that an inmate's right to attend a prison disciplinary hearing is one of the essential due process protections afforded by the Fourteenth Amendment. *Thomas v. Van Ochten*, 1995 WL 49126, **2 (6th Cir. Feb. 7, 1995) (unpublished) (*citing Battle v. Barton*, 970 F.2d 779, 782 (11th Cir.1992) (per curiam), *cert. denied*, 507 U.S. 927 (1993)). The alleged denial of this right deprived Plaintiff of the opportunity to convince an unbiased decision maker that he had been wrongly or falsely accused or that the evidence against him was false. The fact that Michigan provides for such an opportunity is irrelevant, as Plaintiff claims that Defendant's conduct denied him of this right. In the opinion of the undersigned, there is a genuine issue of material fact regarding whether Defendant's conduct violated Plaintiff's due process rights.

Defendant claims that she is entitled to summary judgment on Plaintiff's due process claim pursuant to *Parratt* because he "avers a random and unauthorized act" and cannot prove the inadequacy of state post-deprivation remedies. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), overruled in part on other grounds *Daniels v Williams*, 474 U.S. 327 (1986). In *Parratt*, the Supreme Court held that no procedural due process violation occurs when the deprivation is the result of a "random and unauthorized act," unless the state failed to provide the plaintiff with an "adequate post-deprivation remedy." *Parratt*, 451 U.S. at 543.

The Sixth Circuit has held that in procedural due process claims brought pursuant to 42 U.S.C. § 1983, the "Parratt doctrine" allows dismissal where the state provides an adequate post-deprivation remedy if:

> 1) the deprivation was unpredictable or "random"; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.

- 7 -

*Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416-417 (6th Cir. 1996).  In cases where these conditions are present, "a procedural due process claim will not be stated unless the Plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong."  *Copeland*, 57 F.3d at 479; *Pilgrim*, 92 F.3d at 417.

Post-deprivation procedures may provide adequate due process for deprivations of liberty in limited circumstances. See, *e.g., Zinermon v. Burch,* 494 U.S. at 132 ("[I]n situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake … or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process"); *Daniels v. Williams,* 474 U.S. at 342 (STEVENS, J., concurring in judgments) (noting that *Parratt* could defeat a procedural due process claim that alleged a deprivation of liberty when "a predeprivation hearing was definitionally impossible).  As noted above, the alleged deprivation in this case was the denial of Plaintiff's right to be present during the hearing.  The fact that Plaintiff could appeal the misconduct conviction does not address the deprivation asserted here, which was an opportunity to participate in a fair hearing.  Therefore, the undersigned concludes that Plaintiff's due process claim is not barred by *Parratt*.

Defendant also claims that to the extent Plaintiff is asserting a substantive due process claim, such a claim is barred by *Sandin v. Conner*, 515 U.S. 472 (1995).  However, *Sandin* applies to deprivations of "procedural" due process.  *Sandin*, 515 U.S. at 474.  Therefore, Defendant's assertion lacks merit.  Furthermore, *Sandin* does not bar Plaintiff's procedural due process claim because, as noted above, an inmate's right to attend a prison disciplinary hearing is one of the essential due process protections afforded by the Fourteenth Amendment. *Thomas v. Van Ochten*, 1995 WL 49126, **2 (6th Cir. Feb. 7, 1995) (unpublished) (*citing Battle v. Barton,* 970 F.2d 779, 782 (11th Cir.1992) (per curiam), *cert. denied,* 507 U.S. 927 (1993)).

Defendant claims that she is entitled to summary judgment on Plaintiff's equal protection claims because Plaintiff has made no showing of discriminatory intent. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

In support of his equal protection claim, Plaintiff asserts that Defendant has adopted an "ongoing pattern and custom of denying Black prisoners the opportunity to appear" at their hearings. In addition, Plaintiff claims that a review of Defendant's past record, grievances and ticket history will show a strong dislike for African Americans. Plaintiff alleges that Defendant has been disrespectful of black inmates, calling them "niggers, jungle bunnies, jiggaboos and the like." Because Plaintiff has alleged that he is a member of a suspect class and his claim involves the denial of a fundamental right, he is entitled to strict scrutiny. As noted above, there appears to be a genuine issue of material fact regarding whether Defendant deliberately deprived Plaintiff of his right to attend his hearing and whether Defendant was motivated by a desire to discriminate against Plaintiff on the basis of his race. Defendant has not shown a compelling state interest in taking such an action. Therefore, in the opinion of the undersigned, Defendant is not entitled to summary judgment on Plaintiff's equal protection claim.

Finally, Defendant claims that she is entitled to qualified immunity because Plaintiff has not demonstrated the violation of any clearly established statutory or constitutional right. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

- 10 -

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

In this case, Plaintiff claims that he was denied the opportunity to attend his misconduct hearing on the basis of his race. As noted above, an inmate's right to attend a prison disciplinary hearing is one of the essential due process protections afforded by the Fourteenth Amendment. *Thomas v. Van Ochten*, 1995 WL 49126, **2 (6th Cir. Feb. 7, 1995) (unpublished) (*citing Battle v. Barton,* 970 F.2d 779, 782 (11th Cir.1992) (per curiam), *cert. denied,* 507 U.S. 927

(1993)).  Moreover, when a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.  The undersigned notes the existence of a genuine issue of material fact regarding the allegations in Plaintiff's complaint.  Therefore, Defendant is not entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has sustained his burden of proof in response to Defendant's motion for summary judgment.  Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #13) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  November 1, 2006